IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JOHNNY L. MCDONALD                                    PLAINTIFF

v.                              No. 3:21-cv-14-DPM

NEWPORT HOUSING AUTHORITY                    DEFENDANT

## ORDER

1.      Johnny McDonald, an older African American gentleman, has sued his former employer, the Newport Housing Authority, alleging discrimination.  Many of the material facts in this case are undisputed.  But, where there is some genuine dispute, the Court views the record in the light most favorable to McDonald.  *Smith-Bunge v. Wisconsin Central, Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019).  And the Court must consider only those actions that occurred within 180 days before McDonald filed his EEOC charge.  *Richter v. Advanced Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) (*per curiam*).  Therefore, to the extent that McDonald bases any of his claims on actions that occurred outside the filing period, those discrete acts are no longer actionable.  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).

2.      For more than thirty years, McDonald worked in the Authority's maintenance department.  He started as a maintenance aide in 1989 and worked his way up to maintenance supervisor — a position he held for about five years.  In early 2019, the Authority hired a new

management team—David Gates (executive director), Mike Walker (maintenance director), and Lashun Bland (director of operations)—to restructure its maintenance department and implement new policies to satisfy the United States Department of Housing and Urban Development standards and regulations. Among the changes was renaming McDonald's maintenance supervisor position as maintenance lead.

During the summer of 2019, McDonald experienced some heart-related health issues and submitted requests for medical leave. The Authority granted those requests. In July 2019, McDonald was cleared to return to work with no restrictions and resumed his maintenance lead position without any problems for the next nine months. During May 2020, McDonald's heart-related health issues returned. He submitted a note from his cardiology nurse, Darlene Shipman, on 6 May 2020 stating that he was to remain off work through 19 May 2020. *Doc. 15–23*. Bland responded on behalf of the Authority. She mailed McDonald a letter acknowledging Nurse Shipman's note, outlining the procedures for returning to work, and explaining that if McDonald's leave extended beyond fourteen days, the Authority might need to fill his position due to a shortage in maintenance personnel. *Doc. 15–24*. After his re-evaluation by Nurse Shipman on 19 May 2020, McDonald provided the Authority with a second note from her.

She said he needed, and he requested, four more weeks of leave. *Doc. 15–25.*

Walker called McDonald to schedule a meeting.    The parties disagree about what was said in this conversation.  McDonald says that Walker told McDonald to come in for a meeting that day, but didn't explain why or offer to meet instead the next day.   *Doc. 15–2 at 21-23.* He told Walker that he could not meet that day because he was still out on leave and wasn't feeling well.  *Ibid.*  The Authority says that Walker asked McDonald to meet with management the next day.  He agreed. Walker told him that they needed to meet with Bland to discuss some things.  McDonald then refused to come in the next day.  Shortly after, Walker sent a memo to Bland recounting his version of the conversation.   *Doc. 15–26.*   In that memo, Walker noted that he told McDonald that failure to attend the meeting would be a violation of the company's insubordination policy.    The next morning McDonald didn't appear for the meeting with management.  Bland sent him a letter firing him, stating that an extended period of leave combined with a lack of maintenance personnel was creating a burden on the Authority's operations.  *Doc. 15–27.*

McDonald filed an EEOC charge against the Authority for employment discrimination.  He alleged that he was treated differently from a young, female maintenance department employee who was allowed to take medical leave and return to her job.  He also said the

–3–

real reason he was fired was because of his race, gender, age, and disability. The EEOC dismissed the charge and McDonald filed this lawsuit against his former employer claiming its actions violated Title VII, the ADEA, and the ADA. The Authority seeks judgment as a matter of law all of McDonald's discrimination claims. McDonald presses for a trial.

3.     Because there is no direct evidence of race or sex discrimination in this case, the Court applies the *McDonnell Douglas* burden-shifting framework to those claims. *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014). The Authority argues that McDonald hasn't made a *prima facie* case, but only a modest evidentiary showing is required. *Lake v. Yellow Cab Transportation, Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). The Court therefore assumes McDonald has made a *prima facie* case. The Authority says it fired McDonald for insubordination, refusal to engage in the interactive process regarding his request for four additional weeks of leave, and the burden on the Authority's operations created by a maintenance personnel shortage and McDonald's extended leave request. McDonald disputes these reasons, maintaining that his firing was discriminatory. The Authority's reasons are facially non-discriminatory, so the race and sex discrimination claims boil down to pretext. McDonald can show a material question of fact on pretext by offering sufficient evidence that the Authority's proffered reasons for firing him have no basis in fact or

-4-

that a prohibited reason more likely motivated the Authority's decision. *Thompson v. University of Arkansas Board of Trustees*, 52 F.4th 1039, 1042 (8th Cir. 2022).

He may also show pretext by demonstrating that the Authority substantially changed its legitimate, non-discriminatory reason for firing him. *Twiggs v. Selig*, 679 F.3d 990, 994 (8th Cir. 2012). But no substantial change in the reason for McDonald's firing occurred. The Authority has always maintained that McDonald was fired because of the burden on the Authority's operations due to a lack of maintenance personnel and McDonald's extended leave request. *Doc. 15–27; Doc. 17 at 22.* In response to McDonald's claims, especially his disability claims, the Authority has advanced additional reasons for his firing: insubordination, and not engaging in the interactive process. Even assuming that these supplemental points are consistent with an inference of pretext, it is not enough to support a verdict on either race discrimination or sex discrimination in light of the record as a whole on those claims. The Authority's reliance on the operational burden created by McDonald's not returning to work has been unwavering. Its supplemental and responsive points revolve around that core reason. *Twiggs*, 679 F.3d at 994. And the additional reasons do not bear on any material fact in dispute on the race claim or sex claim. *E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006).

**4.**     McDonald's race discrimination claim fails for a lack of a sufficient comparator.    At this stage, the comparator standard is rigorous, and McDonald has not identified anybody who dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without mitigating or distinguishing circumstances. *Johnson v. Securitas Security Services USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (en banc).

McDonald points to two white maintenance workers, Dale Crawford and "Joe," emphasizing that they were given longer to turn around units and were not punished when they missed deadlines. But McDonald was a full-time permanent employee, while Crawford and "Joe" were both temporary, supplemental hires brought in from neighboring housing authorities to assist with a sudden, significant increase in vacant units that needed to be turned around. They therefore fail as comparators.

McDonald's other potential comparator is Samantha Jimerson — a female maintenance department employee who took leave and was allowed to return to work.  Jimerson, however, fails as a comparator because she and McDonald are the same race, African American. And McDonald's claim that he should've had the chance to apply for the maintenance director job in 2019 is untimely and outside the scope of his EEOC charge.

**5.**     Similarly, McDonald hasn't offered a sufficient comparator to warrant an inference of pretext on his sex discrimination claim. The same strict standard for comparators applies and McDonald must point to someone who is similarly situated in all material aspects. Once again, McDonald offers Jimerson—a younger, female employee in the maintenance department—as a potential comparator. He says that the Authority granted Jimerson's request for medical leave and allowed her to return to work without any problem. While these things may be true, McDonald must show more to make Jimerson an adequate comparator. The Authority submits sworn statements from Gates and Bland that Jimerson was not a maintenance lead and that she performed different duties than McDonald. *Doc. 15–1 at 7 & 15–6 at 6-7.* McDonald hasn't met this evidence with proof indicating otherwise. He also acknowledged twice during his deposition that Jimerson worked underneath him. *Doc. 15–2 at 27 & 28.* And he admitted not knowing why Jimerson requested medical leave or whether she was insubordinate to Walker and refused to engage in the interactive process about her leave. *Doc. 15–2 at 31.* Because McDonald has not identified an adequate comparator to show his firing was pretextual, his sex discrimination claim fails as a matter of law.

**6.**     There is no direct evidence of age discrimination, so the Court must likewise analyze McDonald's ADEA claim using the *McDonnell Douglas* framework. *Tusing v. Des Moines Independent*

–7–

*Community School District*, 639 F.3d 507, 515 (8th Cir. 2011). This claim also comes down to pretext. McDonald must therefore present evidence that "creates a fact issue as to whether the [Authority's] proffered reasons are pretextual" and raises "a reasonable inference that age was a determinative factor in the adverse employment decision." *Tusing*, 639 F.3d at 516. McDonald has not carried this burden. Again, he relies exclusively on Jimerson as a comparator and alleges that she was allowed to take medical leave and return to her job without any problems. Without more, Jimerson fails the rigorous test for adequate comparators. *Johnson*, 769 F.3d at 613.

McDonald's burden is significant. The ADEA requires evidence that age was the but-for cause of the firing decision. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 179 (2009). McDonald has not presented enough evidence for a jury to reasonably conclude that it was.

7.     McDonald's ADA claim for disability discrimination is for a jury. The parties agree; there is no direct evidence of disability discrimination in this case, so the Court applies the burden-shifting *McDonnell Douglas* framework. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016). Again, the Court assumes McDonald has made a *prima facie* case. The Authority offers legitimate, non-discriminatory reasons for firing him. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999). This claim therefore also comes down to pretext.

Has McDonald presented sufficient evidence such that a reasonable juror could find that the Authority's stated reasons for firing him were merely pretext for discrimination? *Russell v. TG Missouri Corp.*, 340 F.3d 735, 743 (8th Cir. 2003).

There is a genuine dispute of material fact regarding what was said during the phone call between McDonald and Walker that precludes summary judgment on this claim. McDonald says he told Walker he couldn't come to the meeting because he was sick with a headache and high blood pressure. *Doc. 15-2 at 32.* Walker says that McDonald told him he couldn't come to the meeting because of his "medical restrictions" and how the Authority had been treating him. *Doc. 15-26.* Taking the record in the light most favorable to McDonald, his reason for not being able to attend the meeting, and therefore the reason for his alleged insubordination, was directly related to his disability. This also creates a material dispute as to whether Bland could have in good faith believed that McDonald was insubordinate for refusing to attend the meeting because of health problems related to his disability. *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 821-22 (8th Cir. 2017). And the reasons that Bland cited for firing McDonald in the letter of termination do not reflect that he was fired for insubordination or failing to engage in the interactive process, which also supports an inference of pretext on this claim. *Doc. 15-27; Trans States Airlines, Inc.*, 462 F.3d at 995. A reasonable juror could find that the Authority's

proffered reasons for firing McDonald were merely pretext for disability discrimination.

The factual dispute about the phone call between McDonald and Walker also precludes summary judgment on the ADA failure to accommodate claim.  The deep issue is whether the Authority failed to make a good faith effort to engage in the interactive process and assist McDonald in seeking the accommodation.  *Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000).  On this record, a reasonable juror could conclude that the Authority did not make a good faith effort to engage in the interactive process.  *Russell*, 340 F.3d at 742.

\*       \*       \*

The Authority's motion for summary judgment, *Doc. 15*, is mostly granted and partly denied.  McDonald's Title VII and ADEA claims are dismissed with prejudice. His ADA claims go forward.

So Ordered.

_WPMarshall Jr._____

D.P. Marshall Jr.
United States District Judge

___7 April 2023_____